# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH A DEVICE ASSIGNED NO. (336) 960-8571, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS

)
)
)
)
)
)
)

Case No. 1:20MJ160-1

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Section 1591 | Sex Trafficking of a Minor |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ MARISA BROWN

*Applicant's signature*

Marisa Brown, FBI Special Agent

*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: _____06/23/2020   1:12pm_____

*Judge's signature*

City and state: _____DURHAM, N.C._____

Joe L. Webster , United States Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A DEVICE ASSIGNED NO. (336) 960-8571, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | Case No. 1:20MJ160-1<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Marisa Brown, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (336) 960-8571, [with INTERNATIONAL MOBILE EQUIPMENT IDENTITY 355685072607616 or 355788071525118] ("the SUBJECT PHONE"), that is stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless (hereinafter, Verizon Wireless), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(l)(A) to

require Verizon Wireless to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.    I am a Special Agent with the Federal Bureau of Investigation and have been since May 2019. My career in law enforcement began as a Staff Operations Specialist with the FBI where I was assigned to support the FBI's mission to combat violent crimes. I was involved in searches, seizures, arrests, and intelligence gathering. I graduated from the FBI Academy as a Special Agent and have received basic and on-the-job training in the investigation of cases involving the sexual exploitation of children. During my career as an FBI Special Agent, I have participated in child pornography and human trafficking investigations. I have participated in the investigation of cases involving the use of computers, cellular devices, and the Internet to commit violations of federal child exploitation laws. I have received training and gained experience in human trafficking and child exploitation investigations, interview and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures relevant to the instant

2

investigation. I have participated in operations targeting underage victims of sex crimes. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. § 1591, and I am authorized by law to request a search warrant.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. I am investigating Jermaine CARRINGTON and Shannon HAUTH for sex trafficking of a minor in violation of 18 U.S.C. § 1591. Based on the facts set forth in this affidavit, there is probable cause to believe that Jermaine CARRINGTON and Shannon HAUTH committed this offense and to search the information described in Attachment A for contraband and evidence, fruits, and instrumentalities of these violations, more particularly described in Attachment B.

**PROBABLE CAUSE**

5. The Federal Bureau of Investigation (FBI) is conducting a criminal investigation of CARRINGTON and HAUTH regarding violations of 18 U.S.C. § 1591, sex trafficking of a minor. Over the course of the

3

investigation, the FBI identified a minor who was a victim (MV) of sex trafficking from March 30, 2019, through April 5, 2019.

6.　　　　The FBI first became aware that CARRINGTON and HAUTH were sex trafficking MV during an interview of MV in August 2019 which related to a separate FBI investigation in Charlotte, North Carolina. During that interview, MV identified CARRINGTON as a "pimp" she worked with in Greensboro, North Carolina. During the interview, MV identified the phone number, (972) 513-5088, as CARRINGTON's phone number. Subsequently, the FBI requested subscriber information for that number, which confirmed CARRINGTON as the subscriber for the phone number.

7.　　　　Based on the aforementioned information, the FBI opened an investigation on CARRINGTON and HAUTH regarding violations of 18 U.S.C. § 1591.

8.　　　　The FBI interviewed MV on January 22, 2020. During the interview, MV confirmed the identity of CARRINGTON and HAUTH based on a driver's license photo of CARRINGTON and HAUTH. MV stated that she and CARRINGTON discussed her age during one of their many conversations. They also discussed how she was not happy with her current situation working for a different "pimp," one of the reasons being she was not able to keep any of the money she earned completing commercial sex acts. CARRINGTON told MV

4

he would treat her better than her current pimp, and they would work together. CARRINGTON told her that either he or another girl would pick up MV when she was ready to leave her current situation. MV reported that she met CARRINGTON via the social media platform, Tagged, and MV thought CARRINGTON was attractive.

9. According to the Legal Request Compliance Guide provided by Tagged, Tagged is a social networking service available on Internet-connected devices where visitors can create personal profiles, post pictures, and socialize via live streaming, 1-on-1 chat, and via various message board environments. According to MV, Tagged is only used for drugs, escorts, pimps, and Uber drivers. CARRINGTON and MV communicated via multiple social media platforms, and then subsequently, communicated via text message and voice call.

10. FBI records checks identified CARRINGTON's phone number, (972) 513-5088, was connected to a Tagged account used by CARRINGTON during this time period based on a profile photo. The profile photo was compared to a driver's license photo identified by MV to be CARRINGTON and assessed by an agent to be CARRINGTON.

11. On March 30, 2019, Shannon HAUTH, the girl CARRINGTON mentioned to MV, picked up MV from the LaQuinta Inn in

5

Charlotte, North Carolina. According to MV, she was on the phone with CARRINGTON when HAUTH arrived at the hotel. HAUTH drove MV to a McDonalds in Greensboro, North Carolina, where MV met CARRINGTON in person for the first time. HAUTH then drove MV to the Red Roof Inn near the Greensboro airport. After arrival, MV had sex with CARRINGTON. CARRINGTON left the hotel the next morning.

12. The SUBJECT PHONE was identified as being used by HAUTH based on an analysis of content on MV's telephone. For example, MV told agents HAUTH picked her up from Charlotte, North Carolina and brought her to Greensboro, North Carolina. Below are some text messages between HAUTH, using the SUBJECT PHONE, and MV:

| Date | Time | To/ From SUBJECT PHONE | Message |
|------|------|------------------------|---------|
| 03/30/2019 | 09:43:56 PM UTC | To | Hey |
| 03/30/2019 | 09:50:13 PM UTC | To | thanks girl for getting me here ◆ ◆◆◆ |

6

| 03/30/2019 | 09:51:18 PM  UTC | From | You're welcome girl get hold of me if you need something next one is on you LOL. |
|---|---|---|---|

13.     CARRINGTON told MV to post escort ads for sexual solicitation on sites she had used with her prior "pimp." MV posted her escort ads on SkipTheGames and Mega Personal.[1] CARRINGTON advised MV to use the photographs she had used in her previous ads with her prior pimp. MV used phone number (972) 889-9097, assigned to TextNow, as the contact information on her escort ads. According to TextNow, the subscriber associated with phone number (972) 889-9097 was MIA LESTER, email miababy035@gmail.com, from March 23, 2019, at 23:26:28 UTC until April 14, 2019, at 03:59:59 UTC.[2] MV stated that she used TextNow to communicate with dates.[3]

---

[1] SkipTheGames and Mega Personal are free escort websites where users can search for escorts.

[2] According to MV, she went by the name MIA when she was with CARRINGTON in Greensboro, North Carolina.

[3] Based on my training and experience investigating human trafficking cases, I know that "dates" refers to sexually illicit acts, such as sex.

7

14.     Below are some text messages between CARRINGTON and

MV,  regarding the creation of the escort ads, which were recovered from

MV's telephone:

| Date | Time | To/ From CARRINGTON | Message |
|---|---|---|---|
| 04/02/2019 | 02:36:32 PM UTC | To | And the seekingarrangement one, when I upload my profile picture, what type of picture do I put on there? |
| 04/02/2019 | 02:36:50 PM UTC | To | Like…Face Picture? Or….. Wht |
| 04/02/2019 | 02:37:03 PM UTC | From | Yes face pic boo no nudes |

| Date | Time | To/ From CARRINGTON | Message |
|---|---|---|---|
| 04/02/2019 | 03:13:18 PM UTC | From | Ok that's a bet yeah I wanted u to look thru a different other sites to get something generating off it and I'm over here helping my |

8

| | | | |
|---|---|---|---|
| | | | granny out for a minute then gonna drop a few things off I'll be linking up with u later on |
| 04/02/2019 | 03:14:32 PM UTC | From | Also N gonna be thru there to either pay for the room or go back in the airport area where the motel 6 and red roof inn at tht side but I'm tryina find out if u getting any text but like I said it's gonna be slow |
| 04/02/2019 | 03:16:32 PM UTC | To | Ok daddy. Yeah, I'm suppose to have a halfhr otw.. But Idk yet |
| 04/02/2019 | 03:19:13 PM UTC | From | Ok that's good well lmk there's a late check out on the room jus if we don't stay there tonight I jus wanna have u in the best spots whatever town we work in feel me |

9

| 04/04/2019 | 04:30:01 AM<br><br>UTC | From | U should rotate your pictures too use other ones u got but maybe something pop off lmk |
|---|---|---|---|

15.     MV disclosed that CARRINGTON directed her to charge the prices she previously charged with her prior "pimp;" however, he requested MV to lower the prices if she was not getting enough clients through the posted ads. CARRINGTON picked up the money MV made every day, leaving MV around 20 dollars for food daily. On occasion, HAUTH would pick up the money for CARRINGTON

16.     Below are some text messages between CARRINGTON, and MV, regarding MV's earnings:

10

| Date | Time | To/ From CARRINGTON | Message |
|---|---|---|---|
| 04/05/2019 | 01:49:29 AM UTC | From | How much we got rn boo |
| 04/05/2019 | 01:50:16 AM UTC | To | 110 |
| 04/05/2019 | 01:51:12 AM UTC | From | Ok N  on her way over there get her the 110 I'll be thru there round 2 or bit earlier |
| 04/05/2019 | 01:51:40 AM UTC | From | She gonna come pick it up because I'm busy right now here n Lexington |
| 04/05/2019 | 01:52:49 AM UTC | To | Okay daddy |

17.    Below are some of the text messages between HAUTH, using the SUBJECT PHONE, and MV, regarding payments:

11

| Date | Time | To/ From SUBJECT PHONE | Message |
|------|------|------------------------|---------|
| 03/31/2019 | 03:39:41 PM UTC | To | Hey, I have a play[4] in 5 minutes. Just letting you know |
| 03/31/2019 | 03:40:53 PM UTC | From | Can you put him off five minutes I'm six minutes away from you right now I need to grab that money from you and give you these clothes |

18. MV reported that CARRINGTON created a protocol for her while she was working for him. MV told CARRINGTON via text message when a date arrived at the hotel, when the date started, and when the date ended. CARRINGTON changed his name to "010" in MV's phone, advised her to delete all their text messages, instructed her to remain inside of the hotel, and created a lock password on her phone.

---

[4] Based on my training and experience investigating human trafficking cases, I know that "play" refers to prostitution dates.

12

19.     MV also stated that HAUTH drove MV to three hotels between March and April 2019. HAUTH was responsible for booking the hotel rooms. Below are some text messages between HAUTH, using the SUBJECT PHONE, and MV:

| Date | Time | To/ From SUBJECT PHONE | Message |
|------|------|------------------------|---------|
| 03/31/2019 | 12:29:04 PM UTC | From | Hey girl.   Are you awake? |
| 03/31/2019 | 12:29:56 PM UTC | To | Yeah iam lol |
| 03/31/2019 | 12:30:28 PM UTC | From | He wants you to get to work this morning. We may have to keep you at that spot today |
| 03/31/2019 | 12:31:12 PM UTC | To | Okay |
| 03/31/2019 | 12:31:15 PM UTC | From | I will figure it out within the next couple hours |
| 03/31/2019 | 02:38:08 PM UTC | From | Never mind girl we can go down to the front desk and pay for your room again I |

13

| | | | |
|---|---|---|---|
| | | | already booked it it's $56 has been paid by noon so go do that by noon and I'll come see you probably a hour or so after that |
| 04/04/2019 | 02:48:17 PM UTC | From | See if you can make anything happen Baby |
| 04/04/2019 | 02:49:39 PM UTC | To | Okay. I should be having some plays[5] in a lilttle |
| 04/04/2019 | 02:52:33 PM UTC | From | OK. And then today was 90 but I think today's gonna be a good day it's a beautiful day out check that fucking Bumble site and Tinder you can put it right on there only in town for the day hang out or something like that |

---

[5] Based on my training and experience investigating human trafficking cases, I know that "play" refers to prostitution dates.

14

20.    MV left Greensboro on April 5, 2019. According to MV, she was picked up in Greensboro by an unknown person and had a date[6] with this person. Then, another unknown person picked up MV and brought her to a hotel in Charlotte, North Carolina. Below are some text messages between CARRINGTON and MV, regarding her departure:

| Date | Time | To/ From CARRINGTON | Message |
|---|---|---|---|
| 04/05/2019 | 03:49:47 PM UTC | To | So since N got a job offer, you don't need me no more. Is that what it is? Let me know bc honestly, I feel like that's how it is. She told me she got a job offer SO she can't drive back n forth anymore.<br><br>If you was REALLY bout me or whatever, you would've figured SOMETHING out. Not jus put me out bc your |

---

[6] Based on my training and experience investigating human trafficking cases, I know that "dates" refers to sexually illicit acts, such as sex.

| | | | girl got a job offer. But i guess y'all good tho now.. I was really bout you, you feel me. But I can't let this keep happening to me daddy fr. This shit ain't right fr. |
|---|---|---|---|
| 04/05/2019 | 03:53:40 PM UTC | From | The line is too slow fr and N woke me up trippin bout she don't wanna get rooms anymore |
| 04/05/2019 | 03:54:51 PM UTC | To | Ok kool. |
| 04/05/2019 | 04:01:31 PM UTC | To | Could've let a bitch know that's how u felt, I could've done things tht I don't do to make this bread but it's kool...its whatever |

21.    Below are some text messages between HAUTH, using the

SUBJECT PHONE, and the MV, regarding MV's departure:

16

| Date | Time | To/From the SUBJECT PHONE | Message |
|------|------|---------------------------|---------|
| 04/05/2019 | 02:29:42 PM UTC | From | Hey girl. Ok. So we are going to have to send you back to Charlotte. I just got a job offer and now I can't drive back and forth and take care of everything. I went ahead and bought you a bus ticket. If u need an uber to the bus station I may be able to set that up for you. |

22.     In my training and experience, subjects in criminal cases have their cell phones before, during, and after the commission of a crime. Obtaining cell phone location information may yield evidence of the crime(s) by showing that the cellular phone was at the scene of the crime. Call records will determine the numbers called prior to, during, or after the crimes(s).

23.     In my training and experience, individuals will often engage in a recurrent way of acting in a given circumstance or throughout a standard day; this behavior pattern is most often referred to as a "Pattern of Life." Subjects in criminal cases also follow a pattern of life dictated by their needs and desires, which in turn may show actions both consistent and inconsistent with their normal daily routines leading up to, during, and following the commission of a crime. Investigators will often use a span of approximately thirty (30) days to ascertain a subject's pattern of behavior, to include routines, movements, and calling/texting habits before, during, and after a crime has been committed. Though pattern of life data may not itself present prima facie evidence of a crime, its use in combination with other evidence may assist in validating/invalidating statements made by subjects, witnesses, and victims concerning a crime. Additionally, it may also aid in determining a subject's residence(s), frequent haunts, associations, and travel patterns to include any travel near victim locations. As such, when a telephone records request is submitted, a timeframe of at least thirty (30) days surrounding the crime(s) time-frame serves as a sufficient baseline for establishing a subject's pattern of life.

## VERIZON WIRELESS

24.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

25.     Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the SUBJECT PHONE. I also

19

know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

26. Based on my training and experience, I know that Verizon Wireless also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

27. Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or

20

other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

29. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an

21

ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## CONCLUSION

31.    Based on the forgoing, I request that the Court issue the proposed search warrant.

32.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States ... that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

33.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law

22

enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

/s/ MARISA BROWN

Marisa Brown

Special Agent

Federal Bureau of Investigation

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 23rd day of June, 2020, at 1:12p.m.

The Hon. Joe L. Webster

UNITED STATES MAGISTRATE JUDGE

23

## ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number:

**(336) 960-8571**

[with INTERNATIONAL MOBILE EQUIPMENT IDENTITY 355685072607616 or 355788071525118] ("the Account"), that are stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless ("the Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

# ATTACHMENT B

## Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 28, 2019 – May 05, 2019:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

       iii.  Local and long distance telephone connection records;

       iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

2

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications

3

were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)].

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of Title 18 U.S.C. § 1591 involving Shannon HAUTH during the period February 28, 2019 – May 05, 2019, in the form of:

(a) Location of the phone during the requested time to identify the pattern of life;

(b) Location of the phone to determine if the phone is geographically located in proximity to other co-conspirators in the captioned matter, which would verify their involvement in furtherance of the crime of prostitution;

(c) Location of the phone in general relation to the location of hotels known to be used for criminal activity, such as prostitution;

(d) Based on the amount of data associated with a phone, other information collected may include information relevant to the crime of prostitution such as subscriber data to determine the user of the phone.

4

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF
## DOMESTIC RECORDS PURSUANT TO FEDERAL
## RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of

perjury by the laws of the United States of America pursuant to 28 U.S.C. §

1746, that the information contained in this certification is true and correct.

I am employed by Cellco Partnership d/b/a Verizon Wireless [hereinafter, "the

**PROVIDER"**], and my title is _____.  I am

qualified to authenticate the records attached hereto because I am familiar

with how the records were created, managed, stored, and retrieved.  I state

that the records attached hereto are true duplicates of the original records in

the custody of the PROVIDER.  The attached records consist of

_____ **[GENERALLY DESCRIBE RECORDS**

**(pages/CDs/megabytes)]**.  I further state that:

a.     all records attached to this certificate were made at or near the

time of the occurrence of the matter set forth by, or from information

transmitted by, a person with knowledge of those matters, they were kept in

the ordinary course of the regularly conducted business activity of the

PROVIDER, and they were made by the PROVIDER as a regular practice;

and

b.     such records were generated by the PROVIDER'S electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of the PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by the PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                              Signature

2